UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80480-CIV-MARRA

PAUL WELLER,

Plaintiff,

vs.

AT&T SERVICES, INC., a foreign
corporation and COMMUNICATIONS
WORKERS OF AMERICA, DISTRICT
3, AFL-CIO,

Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant Communications Workers of America's Motion to Dismiss (DE 7); Plaintiff Paul Weller's Motion to Permit the Filing of Response to Defendant Communications Workers of America's Motion to Dismiss (DE 16); Defendant AT & T's Motion to Dismiss (DE 17) and Plaintiff's Motion to Strike and for Sanctions against Defendant AT & T Services, Inc. and Counsel (DE 22). The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiff Paul Weller ("Plaintiff") filed a Complaint on April 8, 2010, under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for wrongful termination against Defendant AT & T Services, Inc. ("AT & T") and unfair representation by Defendant Communications Workers of America ("CWA"). According to the allegations of the Complaint, Plaintiff was employed by AT & T from March 1987 until February 2008. (Compl. ¶ 1.) Plaintiff, a building

technician for AT & T, was terminated for excessive cell phone usage and for misstating his work schedule on October 18, 2007 by claiming to be at work while on vacation. (Compl. ¶¶ 5-6.) AT & T never informed Plaintiff of any cell phone use restrictions and, unbeknownst to Plaintiff, his teenage daughter used his cell phone and set up an instant messaging account, which resulted in charges in excess of $1,700.00. Upon being informed of the overcharges, Plaintiff offered to make restitution, which AT & T declined. (Compl. ¶ 7.) Furthermore, as a result of that investigation, AT & T accused Plaintiff of not being on duty on October 18, 2007 because it discovered a telephone call originating from New York on that date. Although Plaintiff had informed his supervisor of his vacation on that date, his supervisor did not note Plaintiff's vacation and Plaintiff did not notice any error when he received his paycheck. (Compl. ¶ 8.)

At all relevant times, Plaintiff was a member of a bargaining unit of AT & T's employees and subject to a collective bargaining agreement ("CBA") that became effective on December 11, 2005. (Compl. ¶ 9; Ex. 1, CBA, attached to Compl.) The CBA provides that an employee may only be terminated for "just" cause, and in the event of such a termination, the CWA may file, on behalf of the aggrieved employee, a grievance leading up to binding arbitration. (Compl. ¶ 9.) Plaintiff, a long-standing member of the union, invoked his right to a grievance and was represented by the CWA. The grievance proceeded to the third step in the process, and the CWA claimed, in filing for a grievance, that AT & T's disciplinary action against Plaintiff was without just cause. (Compl. ¶ 10; Ex. 2, January 16, 2008 Email Correspondence, attached to Compl.) The CWA then "unreasonably and without justification, arbitrarily, capriciously and/or in bad faith, refused to proceed with Plaintiff's request for arbitration." (Compl. ¶ 11; October 14, 2009 Correspondence, Ex. 2, attached to Compl.) Plaintiff internally appealed the decision through the

2

CWA's internal process, which "rubber stamped" the denial of Plaintiff's request for arbitration, culminating in an October 14, 2009 decision wherein the CWA Executive Board denied Plaintiff's appeal. (Compl. ¶ 12.) In refusing to pursue his arbitration, AT & T "wrongfully terminated Plaintiff without just cause" and the CWA "acted in an arbitrary manner and/or in bad faith in refusing to process" Plaintiff's grievance to arbitration. (Compl. ¶ 13.) Specifically, the conduct used, in part, to justify Plaintiff's termination was not work-related but the result of acts of Plaintiff's teenage daughter. Plaintiff offered to reimburse AT & T for the costs incurred by his daughter; Plaintiff was never informed about restrictions on the use of AT & T issued cell phone, whether for personal use or use of its features. Plaintiff informed his supervisor about the vacation day and the supervisor failed to note it, and Plaintiff provided all of this information to Defendants who either disregarded it or failed to consider the impact the information would have at the arbitration. (Compl. ¶ 13.)

      The CWA moves to dismiss the Complaint on the ground that the Complaint only makes superficial allegations against the CWA and has not pled specific facts to support his claim that the CWA's decision not to arbitrate was arbitrary, discriminatory or in bad faith. (DE 7-1 at 5, 7.) AT & T's motion to dismiss asserts that Plaintiff's failure to state a claim against the CWA for breach of the duty of fair representation is fatal to Plaintiff's claim against AT & T. In addition, AT & T contends Plaintiff's claim is barred by the statute of limitations.

      II.  Legal Standard

      Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint

attacked by a Rule 12(b) (6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

III.  Discussion

A.  Motions to Dismiss

In addressing the breach of the duty of fair representation, the Eleventh Circuit has stated the following:

> [T]he employee must show that the union's handling of the grievance was either arbitrary, discriminatory, or done in bad faith. Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206 (11th Cir.1982); see also Vaca v. Sipes, 386 U.S. 171, 190 (1967). An example would be when a union arbitrarily ignores a meritorious grievance or is perfunctory in its processing of the grievance. Id.
>
> We note that a union is allowed considerable latitude in its representation of employees. The

4

>grievance and arbitration process is not conducted in a judicial forum and union representatives are not held to strict standards of trial advocacy . . . Cases are uniform in holding that neither negligence on the part of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an arbitrary and perfunctory manner. Harris, 668 F.2d at 1206 (citations omitted).

Parker v. Connors Steel Co., 855 F.2d 1510, 1520-21 (11th Cir. 1988).  Furthermore, while "[i]t is beyond doubt that the duty of fair representation includes an obligation to investigate and ascertain the merit of employee grievances," the duty of representation "does not confer an absolute right on an employee to have his complaint carried through all stages of the grievance procedure." Turner v. Air Transport Dispatchers' Ass'n., 468 F.2d 297, 299 (5th Cir. 1972).[1]

Here, Plaintiff has alleged that the union failed to challenge various arbitrary actions by his employer which included termination for (1) the violation of a rule regarding the use of a cell phone despite the fact that this rule was never promulgated and (2) failing to inform AT & T about a mistake on a paycheck.  (Compl. ¶ 13.)  In its response to the motion to dismiss, Plaintiff also states that the union "did nothing but perfunctorily press the grievance through various initial steps [and] did no research or analysis of how arbitrators ruled in like cases." (DE 14 at 2.) Given that Plaintiff did not make these allegations in the Complaint, the Court believes the best course of action is to allow Plaintiff leave to amend the Complaint to include these allegations. In addition, the Court is unclear whether by making allegations about the "arbitrary actions" of his employer, Plaintiff is attempting to claim that the CWA arbitrarily ignored a meritorious grievance. Plaintiff is granted leave to amend to clarify this point and to allege further how the

---

[1] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

CWA arbitrarily ignored the grievance.

In so ruling, the Court notes that a review of the caselaw provided by the CWA and the Court's own research of cases in this Circuit has uncovered that cases addressing a claim for the duty of fair representation arise mostly in the context of summary judgment, trial or post-trial. See, e.g., McCollum v. Bolger, 794 F.2d 602 (11th Cir. 1986) (trial judgment); Higdon v. United Steelworkers of America, 706 F.2d 1561 (11th Cir. 1983) (summary judgment); Harris, 668 F.2d at 1204 (summary judgment); Freeman v. O'Neal Steel, Inc., 609 F.2d 1123 (5th Cir. 1980) (trial judgment); Turner v. Air Transport Dispatchers' Assoc., 468 F.2d 297 (5th Cir. 1972) (summary judgment); Tedford v. Peabody Coal Co., 533 F.2d 952 (5th Cir. 1976) (trial judgment); Encina v. Tony Lama Boot Co., 448 F.2d 1264 (5th Cir. 1971) (summary judgment).[2] Thus, to the extent the CWA contends that Plaintiff's allegations rise only to the level of negligence or a complaint that the merits of the grievance was not considered, the Court cannot make such a determination on a motion to dismiss. (DE 7-1 at 6.)

In addressing the sufficiency of the Complaint, the Court must also address AT & T's argument that Plaintiff's failure to make out a viable claim against the union for breach of the duty of fair representation is fatal to Plaintiff's claim against AT & T. Here, Plaintiff has exercised his right to bring a suit against both the employer and the union for breach of the collective bargaining agreement and breach of the duty of fair representation. DelCostello v.

---

[2] In the CWA's reply memorandum, it cites various cases from outside this district that dismissed a fair representation claim on a motion to dismiss. (DE 15 at 3.) These cases, which are not binding, do not persuade the Court. Some of those cases do not provide adequate factual recitation of the complaints at issue, others make a determination of negligence at the motion to dismiss stage, which appears contrary to Eleventh Circuit cases resolving this issue at either the summary judgment stage or later, and another case addresses a complaint filed prior to the Iqbal decision.

International Brotherhood of Teamsters, 462 U.S. 151, 163-64 (1983).  These types of suits are called section 301 hybrid claims. Coppage v. U.S. Postal Service, 281 F.3d 1200, 1203-04 (11th Cir. 2002).  To prevail, a plaintiff must demonstrate both that the collective bargaining agreement was breached and that the union breached its duty of fair representation. DelCostello, 462 U.S. at 165.  Thus, AT & T is correct that the claims are interdependent, and assuming Plaintiff could not make out a claim for breach of the duty of fair representation, he would not be able to prevail on his hybrid claim. DelCostello, 462 U.S. at 164 quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66-67 (1981) ("the two claims are inextricably interdependent").

The Court will now turn to AT & T's argument that Plaintiff's claim is barred by the six-month statute of limitations.  According to AT & T, the union notified Plaintiff of its final decision not to arbitrate by letter dated October 14, 2009 and service on AT & T was not effectuated until May 28, 2010, thereby making the claim untimely. (Oct. 14, 2009 Correspondence, Ex. 2 to Compl.; DE 17 at 5.)  This action was filed, however, within six (6) months of the time Plaintiff was notified of the union's final decision.

In DelCostello, the United States Supreme Court held that the six-month provision set forth in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b),[3] applies to section 301 hybrid claims against both the employer and the union. Id. at 173.  Furthermore, hybrid claims under the Railway Labor Act are also governed by the six-month statute of limitations set forth in section 10(b) of the National Labor Relations Act.  In West v.

---

[3] This section provides in pertinent part: "Provided. . . .  no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made . . . ."  29 U.S.C. § 160(b).

Conrail, 481 U.S. 35 (1987), the United States Supreme Court ruled that the failure to effect service within section 10(b)'s six-month statute of limitations does not bar a hybrid claim under the Railway Labor Act so long as the plaintiff filed suit within the limitations period. 481 U.S. at 38-39.  In noting that there is "no reason to distinguish the Labor Management Relations Act [ ] from the Railway Labor Act for the limited purpose of determining whether service must be effected within the limitations period,". . . the Court stated that "[t]he only gap in federal law that we intended to fill in DelCostello was the appropriate limitations period. We did not intend to replace any part of the Federal Rules of Civil Procedure with any part of [section] 10(b) of the National Labor Relations Act." Id. at 38 and n.2.  Soon thereafter, in American Postal Workers Union v. United States Postal Svc., 823 F.2d 466 (11th Cir. 1987), when interpreting the United States Arbitration Act,[4]  the Eleventh Circuit noted that West held that "when the six-month period of section 10(b) of the NLRA is borrowed for a DelCostello type action, the borrowing does not include the provision in that subsection requiring that 'service of a copy thereof upon the person against whom such charge is made' also be effected within the six-month period." Id. at 476.  The Court then noted that the question of whether to extend the borrowed limitation period to include an additional four (4) months to allow service to be effected in accordance with Fed. R. Civ. P. 4 "is no longer ours to make." Id. at 477.  For this reason, the Court will not dismiss the claim against AT & T on the basis of lack of timely service.

     Nonetheless, AT & T contends the language in West regarding claims under the National Labor Relations Act is dicta and pre-West decisions from the Eleventh Circuit held that filing and service of a complaint under section 301 must be made within six months.  (DE 17 at 5

---

[4]  9 U.S.C. § 1, et seq., also known as the Federal Arbitration Act.

8

citing Williams v. Greyhound Lines, Inc., 756 F.2d 818 (11th Cir. 1985); Dunlap v. Lockheed-Georgia Co., 755 F.2d 1543 (11th Cir. 1985) and DE 21 at 4.)  Furthermore, AT & T relies on an unreported post-West case from the Southern District of Georgia that relied on these earlier Eleventh Circuit cases in holding that the section 301 claims were barred for failure to serve within six months. Todd v. Chicago Bridge & Iron Co., No CV187-57, 1989 U.S. Dist. LEXIS 1049, at * 22-23 (S.D. Ga. Jan. 3, 1989).  The Todd case, however, did not address the West opinion and lacks precedential value.  Moreover, based on the language in West that there is no reason to distinguish the Labor Management Act from the Railway Labor Act, West, 481 U.S. 38 n.2,  the Court believes that the pre-West Eleventh Circuit cases are no longer good law.  This is especially true given the Eleventh Circuit's statement that, for purposes of fair representation suits, it does not distinguish between the National Labor Relations Act and the Railway Labor Act, see Leach v. Pan American World Airways, 842 F.2d 285, 287 n.2 (11th Cir. 1988), and its statement in American Postal Workers, that in § 301 hybrid cases, the decision to extend a borrowed limitations period to include an additional four (4) months to effect service pursuant to Fed. R. Civ. P. 4 "is no longer ours to make." American Postal Workers, 823 F.2d at 477.

    B.  Motion to Strike and for Sanctions

Plaintiff seeks to strike AT & T's argument that the Complaint was not timely served and for sanctions pursuant to 28 U.S.C. § 1927 because AT & T did not alert the Court to the West case until the reply memorandum and then proceeded to argue that West was dicta.  Based on that conduct, Plaintiff contends AT & T needlessly multiplied the litigation.  In response, AT &T points out that it was responsible for alerting the Court to the West opinion, not Plaintiff, and that it learned of the West case upon conducting researching for its reply memorandum.

9

Section 1927 states that any attorney admitted to conduct cases in any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.  Because the provisions of section 1927 are being penal in nature, they must be strictly construed.  Peterson v. BMI Refractories, 124 F.3d 1386, 1395 (11th Cir.1997). Three essential requirements must be satisfied before sanctions are awarded under this section: 1) the attorney must engage in unreasonable and vexatious conduct; 2) that conduct must multiply the proceedings; and 3) the dollar amount of the sanction must not exceed the costs, expenses and attorney's fees reasonably incurred because of such conduct. Id. at 1396; accord McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001).

The Eleventh Circuit has interpreted the term "vexatious" to mean frivolous, unreasonable or without foundation, even though not brought in subjective bad faith. See United States v. Gilbert, 198 F.3d 1293, 1296 (11th Cir.1999). Something more than a lack of merit is required to award sanctions under section 1927. See McMahan, 256 F.3d at 1129; accord Harriston v. Chicago Tribune Co., 136 F.R.D. 482, 485 (N.D. Ill.1991) (denial of motion to disqualify attorney did not mean the motion was frivolous). Nor is simple mistake or mere negligence grounds for section 1927 sanctions.  See Kotsilieris v. Chalmers, 966 F.2d 1181, 1184 (7th Cir. 1992); see also Karnes v. Fleming, No. H-07-0620, 2009 WL 385458, at * 2 (S.D. Tex. Feb. 17, 2009) (section 1927 does not punish mere slipshod work; it punishes vexatious conduct); Alexander v . F.B.I., 541 F. Supp. 2d 274, 302 (D.D.C. 2008) ("the courts are unanimous that unintended, inadvertent, or even negligent conduct will not support an assessment of fees and costs under Section 1927").

Here, AT & T's counsel's conduct does not warrant the imposition of sanctions. Counsel's neglect in not finding the <u>West</u> case until the reply memorandum was, at worst, an oversight that it remedied. Indeed, Plaintiff's counsel also failed to alert the Court to this case, a case which allowed him to prevail on this point. Although the Court may have rejected AT & T's counsel's argument with respect to <u>West</u>, the lack of merit does not justify an award of sanctions. After careful consideration of the briefing, the Court concludes Plaintiff's motion for sanctions is without merit.

<u>IV. Conclusion</u>

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

(1) Defendant CWA's Motion to Dismiss (DE 7) is **GRANTED**. The Complaint is dismissed without prejudice and Plaintiff is granted leave to amend the Complaint consistent with Order. Plaintiff shall file an amended complaint **within 14 days of the date of entry of this Order.**

(2) Plaintiff's Motion to Permit the Filing of Response to Defendant Communications Workers of America's Motion to Dismiss (DE 16) is **GRANTED nunc pro tunc.** Plaintiff has shown good cause and is permitted to file its response to the CWA's motion to dismiss.

(3) Defendant AT & T's Motion to Dismiss (DE 17) is **GRANTED IN PART AND DENIED IN PART.**

  (4) Plaintiff's Motion to Strike and for Sanctions against Defendant AT & T Services, Inc. and Counsel (DE 22) is **DENIED**.

  **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 26th day of October, 2010.

                   _____
                   KENNETH A. MARRA
                   United States District Judge